**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

|  |  |
|---|---|
| ) | **CIVIL ACTION NO. No. 4:13-CV-00203-F** |
| SHONTAY HOUSE and ) | |
| MARY VEGA, ) | |
| ) | |
| Plaintiffs, ) | **PLAINTIFFS' MEMORANDUM IN** |
| ) | **OPPOSITION TO DEFENDANTS** |
| v. ) | **MOTION TO DISMISS** |
| ) | |
| FEDERAL HOME LOAN ) | |
| MORTGAGE CORPORATION, ) | |
| BROCK & SCOTT, PLLC, ) | |
| ) | |
| Defendants | |

Come now the Plaintiffs, Shontay House ("House") and Mary Vega ("Vega"), by and through undersigned counsel, and submit this Memorandum of Law in Opposition to Defendants', Federal Home Loan Mortgage Corporation ("Freddie Mac") and Brock & Scott, PLLC's ("Brock & Scott"), Motion to Dismiss ("Defendants' Memorandum") for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SUMMARY OF THE CASE

Plaintiffs lived in a single family home located at 2912 Satterfield Drive, Greenville, North Carolina. Defendant Freddie Mac is the current record owner of the home having purchased it at a foreclosure sale as evidenced by a Substitute Trustees deed recorded March 3, 2014. Defendants acknowledged that House and Vega are residential tenants entitled to the protections of the "Protecting Tenants at Foreclosure Act of 2009" (hereinafter "PTFA", and

1

codified at Pub.L. 111-22, Div A. Title VII §§ 701-704, May 20, 2009). Compl. ¶ 12 and Exhibit A. Plaintiffs allege Freddie Mac is their landlord, having purchased the property through foreclosure sale subject to their tenancy. Compl. ¶¶ 11, 12, 31, 39. Defendant Freddie Mac has expressly recognized the Plaintiffs' tenancy, but asserts that it may unilaterally eject the Plaintiffs without the need for any due process or court action, including the required procedures under N.C. Gen. Stat. § 42 *et seq*. In accordance with this belief, Freddie Mac attempted to eject, and succeeded in ejecting, the Plaintiffs on June 16, 2014, without initiating a summary ejectment action against the Plaintiffs. Plaintiffs filed a Complaint in state court alleging claims for breach of contract/lease, wrongful interference with contract, trespass, trespass to chattel, conversion, intentional infliction of emotional distress, and unfair and deceptive trade practices and requested remedies including a Temporary Restraining Order, Preliminary Injunction, and money damages.[1] Plaintiffs obtained an *ex parte* Temporary Restraining Order June 24, enjoining Defendants from any further attempts to eject Plaintiffs from the property, effectively allowing the Plaintiffs the ability to retake possession of the Property.

The Defendants' position seems to be that Plaintiffs have no rights in the Property as their lease was extinguished by the foreclosure. Plaintiffs' position is that once a foreclosure is completed and a tenant asserts to the purchaser before, during or after a foreclosure sale that they are residential tenants, Defendant, Freddie Mac, is required by law to (a) recognize the lease and become, by operation of law, a successor landlord. By virtue of this Landlord Status and N.C. Gen. Stat. § 42-25.6, the Defendants only legal method to eject the Plaintiffs was the summary ejectment process, which was not followed.

---

[1] Plaintiffs' claims for a temporary restraining order and preliminary injunction have been mooted by the Plaintiffs moving out of the Property to a new location.

## LEGAL STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER F.R.C.P. 12(b)(6)

The Federal Rules of Civil Procedure use a simple, notice pleading standard, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has concluded that "the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which [s]he bases [her] claim…" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, n.3 (2007) (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The Supreme Court made it clear in *Twombly* that it was "not require[ing] heightened fact pleading on specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). In *Iqbal,* the Supreme Court noted that "[d]etermining whether a complaint states a plausible claim for relief…will be a context-specific task that requires the reviewing court to draw on its judicial expertise and common sense." *Id.* at 679.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; [it] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243-44 (4th Cir. 1999) (internal quotations and citations omitted). In ruling on a motion to dismiss for failure to state a claim, the Court may not venture "into factual representations, assumptions, and speculations that may or may not be the subject of ultimate dispute on the evidentiary record." *Lu v. Zurich Am. Ins. Co.,* 115 Fed. Appx. 613, 618 (4th Cir. 2004); *see also Philips v. Pitt County Memorial Hosp.*, 503 F. Supp 2d 776, 779 (E.D.N.C. 2007) ("When reviewing a motion to dismiss, the court assumes the facts alleged

in the complaint are true and construes the allegations in the light most favorable to the pleader.") (internal citations omitted). In fact, the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the Plaintiff." *E.I. du Pont Nomours & Co. v. Kolon Industries,* 637 F.3d 435, 440 (4th Cir. 2011) (internal quotations and citations omitted). "[A] motion to dismiss 'allows a court to eliminate actions that are fatally flawed in their legal premises.'" *DirecTV, Inc. v. Tolson,* 498 F. Supp. 2d 784, 800 (E.D.N.C. 2007) (quoting *Parham v. PepsiCo, Inc.,* 927 F. Supp. 177, 178 (E.D.N.C. 1995)). The Fourth Circuit has expressed the view that "a rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989).

## STATEMENT OF FACTS

Prior to June 16, 2014, the Plaintiffs' residence was 2912 Satterfield Dr., Greenville, North Carolina (hereinafter the "Property"). Compl. ¶ 7. Vega and House were residential tenants, having entered into possession on or about March 15, 2013 when they leased the residence from the prior owner, Steven Mills. Compl. ¶ 7. The Defendant, Freddie Mac, is a successor in interest to Plaintiffs' original landlord, Mr. Mills, having acquired title to the premises by being the highest bidder at a foreclosure sale (or taking assignment of the bid from the lender and high bidder, BB&T) by virtue of a trustees deed dated February 18, 2014, and recorded at the office of the Pitt County Register of Deeds on March 3, 2014 (Note: Defendants have requested the court to take judicial notice of the entire foreclosure file at 13-SP-696. Plaintiffs do not object). Compl. ¶ 11, Defendants Memorandum Page 3. The Defendants obtained, through the Foreclosure file, a Writ of Possession on June 5, 2014. Exhibit D to

Defendants Memorandum. The Writ does not name Vega or House by name, nor were Vega or House ever made parties to any action in regards to the possession of the Property. *Id*.

The Plaintiffs obtained a Temporary Restraining Order from the Honorable Judge, on June 24, 2014, whereby the Plaintiffs were ordered to pay, to the Pitt County Clerk of Superior Court, three hundred and 00/100 dollars ($300.00), which is still being held by the Clerk of Court. (Dkt. Entry 1-2). The Complaint is silent on whether the Plaintiffs have made any payment to Freddie Mac. As such, any factual assertion relating to the payment or non-payment by Defendants and must be disregarded for this Motion, as such a statement is one made outside of the pleadings and improper for a Motion to Dismiss under Rule 12(b)(6).[2]

## ARGUMENT

### A. Defendants Failed to Follow Applicable Statutory Procedures to Remove the Tenants From Possession.

Defendant, Freddie Mac, asserts that it followed the applicable statutory procedures to obtain the writ of possession. However, the statutory procedures to obtain the writ of possession, utilized by the Defendants, are not the statutory procedures required to eject a residential tenant. The Defendants, in making the case for a writ of possession, argue that there can be no tenancy in North Carolina after a Foreclosure sale. See Defendants' Memorandum generally. However, the Defendant fails to recognize the necessary implications of the PTFA, primarily its preemption of North Carolina state law. The crux of this case is whether, by virtue of the PTFA and its pre-emption of pre-existing state law, a tenancy survives after a foreclosure sale. As this case will ultimately rest on the determination of whether the PTFA protects the Plaintiffs pre-existing residential tenancy, it is helpful to look at the exact language of the statute:

Section 702. Effect of Foreclosure on Preexisting Tenancy

---

[2] Plaintiffs are not obligated to pay any funds to the Defendants as they do not possess the Property, the TRO has been dissolved and there will be no Preliminary Injunction.

(a) IN GENERAL.—In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to—

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure—

(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

(B) without a lease or with a lease terminable at will under State law, subject to the receipt by the tenant of the 90 day notice under subsection (1),

except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

(b) BONA FIDE LEASE OR TENANCY.—For purposes of this section, a lease or tenancy shall be considered bona fide only if—

(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;

(2) the lease or tenancy was the result of an arms-length transaction; and

(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

Pub.L. 111-22, Div A. Title VII §§ 701-704, May 20, 2009. Under the applicable standard for a 12(b)(6) motion to dismiss as discussed above, the facts, as stated in the Complaint, are taken to be true. Plaintiffs assert that they are bona fide tenants. In support of this position they have alleged that they: (a) were residential tenants, (b) under a lease entered into prior to the foreclosure of the premises and (c) Freddie Mac is a successor in interest in the property pursuant to the foreclosure. Plaintiffs are not aware of any other affirmative pleading requirement to put Defendants on notice of their claim, nor do Defendants cite any such requirement. There is no

debate in front of this Court as to whether this is a federally related mortgage loan or whether the foreclosure was instituted after May 20, 2009, the date of enactment of the PTFA.

Freddie Mac did not provide the Plaintiffs with the 90 day notice to vacate after its recordation of the Deed to the Property. *See* Comp. and Defendants' Memorandum. Also, it is not disputed that Freddie Mac, as a corporate entity, will not actually be occupying the home as its principal residence. This effectively extends the tenant's rights past the initial 90 day notice period to the natural term of the lease, including potential renewals if not terminated. *Id.* When Freddie Mac purchased the property, it took the property subject to the rights of the tenants, including the right to retain occupancy through the end of the lease term. The rights of tenants are perhaps the most important portion of the PTFA. These rights are the tenant rights granted under N.C. Gen. Stat. § 42 *et seq,* and relevant case law, that now survive a foreclosure sale.

There is no dispute that Defendants have willfully ignored the proper procedures under North Carolina law in regards to the ejectment of residential tenants, N.C.G.S. § 42-25.6 – *et seq*. Defendants assert that they have no obligation to give tenants residing in foreclosed properties notice and a hearing before a judicial body. Defendants, in their Memorandum, disagree with Plaintiffs' claims of tenancy, despite their admission of its existence by affidavit. However, issues relating to the existence of a tenancy should be raised in judicial proceedings, not determined in the sole discretion of the Defendants. N.C.G.S. § 42-25.6 mandates that "it is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed, or otherwise constructively or actually removed from his dwelling unit only in accordance with the procedure described in Article 3 or Article 7 of this Chapter." Article 7 is not applicable in this matter as it concerns criminal activities in demised premises. N.C.G.S. § 59, *et. seq*. A tenant in North Carolina with a periodic tenancy

7

lasting a year or more must be given notice to quit of at least 30 days before the end of the current year of tenancy. N.C. Gen. Stat. §42-14. Finally, even if the Plaintiffs had no existing lease at the time of the improper ejectment, they would have been hold-over tenants, whose ejectment must be done in accordance with Article 3 of N.C. Gen. Stat § 42. N.C. Gen. Stat. § 42-26. As such, the exclusive method for ejectment of residential tenants is through the summary ejectment procedure in Article 3. *Stanley v. Moore*, 339 NC 717; 454 S.E.2d 225 (1995). Further, in an action by a tenant for wrongful eviction by summary proceedings, alleging the suffering of "damages incident to [a] wrongful eviction, *i. e.,* 'a shelter and support for his family, etc.'" is sufficient to properly allege damages. *Burwell v. Brodie,* 134 N.C. 540, 543, 47 S.E. 47, 48, (1904).

"[W]hen a party asserts what he knows is false, or does not know to be true, to another's loss, and to his own gain, he is guilty of fraud; a fraud in fact, if he knows it to be false, a fraud in law, if he does not know it to be true." *Philadelphia, Wilmington & Baltimore Co. R.R. v. Howard,* 54 U.S. 307, 336, 14 L. Ed. 157, 170 (1852). In a previous court proceeding, Defendants submitted an affidavit stating "it is hereby determined that a tenant exists, and the tenant was afforded the 90 days provided under the "Protecting Tenants at Foreclosure Act." *See* Ex. A of Complaint. The Defendants, by submitting the affidavit admitting the tenancy, in their submission to the clerk of court, should be judicially estopped from contesting the existence of the tenancy in the current case. By stating "it is hereby determined that a tenant exists, and the tenant was afforded the 90 days provided under the 'Protecting Tenants at Foreclosure Act'" the Defendants acknowledged, under oath, that the Plaintiffs were in fact tenants, subject to the protections of the PTFA. Ex. A to the Complaint. As such, the Defendants must follow the

mandatory procedures to summarily eject tenants, specifically those outlined in Article 3 of N.C. Gen. Stat. 42.

## B. __Breach of Contract Claim__

Freddie Mac moves for dismissal of Plaintiffs' breach of contract claim on the alternative grounds that (a) their lease was extinguished by the foreclosure of the property, (b) that because Freddie Mac was not a party to the lease between Mills and the Plaintiffs there is no privity of contract, and (c) there was no deprivation of use and enjoyment of the property. These arguments are directly contradicted by the plain language of the PTFA and the allegations of the Complaint.

First, the Defendants were correct, that under North Carolina law, prior to May 20, 2009, the foreclosure of a senior deed of trust would extinguish all junior interests including unrecorded leasehold interests. However, the cases cited in the Defendants' Memorandum are clearly pre-PTFA cases, inapplicable to the case at bar. Taking this argument in a light most favorable to the Defendants, North Carolina's state courts have not yet reached any definitive decisions on the interplay of the PTFA and landlord tenant law / foreclosure law.[3] However the course of action Freddie Mac proposes to take, with regard to the Plaintiffs, and others similarly situated, is exactly what Congress desired to prohibit in enacting the PTFA.

In essence, Congress provided Plaintiffs, and other similarly situated tenants, with two new express property rights: "The PTFA (citation omitted) requires that any immediate successor

---

[3] The North Carolina Court of Appeals issued an unpublished opinion on October 1, 2013 in the matter of *Federal National Mortgage Association v. Mclean*, No. COA13-364; 2013 N.C. App. Lexis 1006 (2013) that has some applicability to this action. Interestingly that case involved Brock & Scott. In that case, however, Fannie Mae properly filed a summary ejectment action to evict a tenant who defended the ejectment by asserting PTFA bona fide tenant status. The trial court made findings of fact and conclusions of law. In the case at bar, Plaintiffs were never given the opportunity to appear in court and raise their defenses, but were instead forcibly removed before their day in court. That is the central claim for the breach of lease / contract claim.

in interest take a foreclosed residential property, **subject to the existing lease** and provide tenants residing in the property with notice to vacate at least ninety days in advance of the date by which the successor, generally the purchaser, seeks to have the tenants vacate the property. Except where the purchaser will occupy the property as the primary residence, **the term of any bona-fide lease entered into before the notice of foreclosure and extending ninety days also remains in effect**." (Federal Reg., Vol. 77, No. 51, March 15, 2012. *emphasis added*.)

Senator Chris Dodd, in enacting the Dodd-Frank bill that clarified the PTFA notice provisions, further defined tenant's rights in the leasehold and to due process.

> "For too long, tenants have been the innocent victims of the foreclosure crisis. Countless tenants across the country have been forced to leave their homes, simply because their landlords were unable to pay their mortgages. …This new law protects tenants facing evictions due to foreclosure by ensuring that they can remain in their homes for the length of their lease or, at the least, receive sufficient notice and time to relocate their families and lives to a new home." *Bank of America v. Owens*, 2010 NY Slip Op 20164 (N.Y. Sup Ct. 2010) citing 155 Cong. Rec. S8978-01 (August 6, 2009.)

Congress has expressly created a statute with the legislative intent to create new property rights and defenses to eviction actions for leasehold interests in foreclosed homes. It is unfathomable to think that either the Defendants, on a unilateral basis, or the state legislature, under the prior enacted foreclosure statute, could possibly pre-empt federal law, especially when Congress meant to speak exactly on the issue. The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The PTFA rights to tenancy are federally created rights.[4] Freddie Mac had the opportunity to avoid becoming the successor in interest to the Plaintiff's lease with Mills;

---

[4] Note, Plaintiffs are not asserting that they has a federal private right of action under the PTFA. Instead they are claiming that the PFTA preempts state foreclosure laws in regards to pre-existing tenancies. For discussion of preemption doctrine and the supremacy clause, see *Arizona v. United States*, 132 S. Ct. 2492; 183 L.Ed. 2d 351 (2012); *Geier v. American Honda Motor Company, Inc.*, 529 U.S. 861 (2000).

it did not have to purchase the residence at the foreclosure sale. However, once it did, it acquired the property subject to the residential tenancy after foreclosure and became Plaintiffs' landlord, by operation of law.

In this case, Plaintiffs have alleged that Freddie Mac is their landlord and breached the warranty of quiet enjoyment by forcibly dispossessing them of their residence, without following the summary ejectment procedure, as outlined in Article 3 of N.C. Gen. Stat. § 42. If the facts at trial establish that they were, in fact, bona fide tenants, then there is no material dispute that Freddie Mac did breach said warranty, as their very actions caused the Plaintiffs to be forcibly removed from their residence.

In order to quit a term of years lease there must be at least thirty days notice in the current year lease. NC Gen Stat § 42-14. "A tenant from year to year, according to all the authorities, is entitled to notice to quit before he can be dispossessed, except in cases where he has disclaimed the relation of landlord and tenant, and a mere demand for possession…is not the kind of notice which the law requires." *Vincent v. Corbin,* 85 N.C. 108, 110 (1881). "Generally, the effect of failure to provide notice when it is required under G.S. Sec. 42-14 is that the parties are bound to a new term." *Lewis v. Lewis Nursery, Inc.,* 80 N.C. App 246, 252, 342 S.E.2d 45, 48, *cert denied,* 317 N.C. 704, 347 S.E.2d 43 (1986). The PTFA states that the Purchaser takes subject to the rights of the Tenant. Pub.L. 111-22, Div A. Title VII §§ 701-704, May 20, 2009. The right of the tenant with a Term of Years lease, in North Carolina, requires thirty days notice in the current year's lease before termination of that lease. N.C. Gen. Stat. § 42-14; *see also Lewis,* 80 N.C. App at 252, 342 S.E.2d at 48; *Stafford v. Yale,* 228 N.C. 220, 44 S.E.2d 872 (1947).

The Complaint alleges that the Defendants did not terminate the lease. The Plaintiff alleged that Freddie Mac never terminated the lease, which for the purposes of this motion is

enough to state a claim that Freddie Mac breached the lease. Freddie Mac has unilaterally decided, at its own peril, that the Plaintiffs have no lease. Under the *Frye* analysis cited in the Memorandum, if Freddie Mac is wrong, and the lease did survive the foreclosure, the breach was in the unlawful ejectment of the Plaintiffs.

The Defendants argue that the Plaintiffs failed to sufficiently plead privity. Privity "has been defined as 'a derivative interest founded on, or growing out of, contract, connection or bond of union between parties; mutuality of interest.'" *Lee Cycle Center, Inc., v. Wilson Cycle Center, Inc.,* 143 N.C. App. 1, 8, 545 S.E.2d 745, 750 (2001) citing *Murray v. Nationwide Mutual Ins. Co.,* 123 N.C. App. 1, 15, 472 S.E.2d 358, 366 (1996). The Complaint alleges that Mills and the Plaintiffs entered into a residential rental agreement. Compl. ¶ 7. Freddie Mac purchased the Property subject to the residential rental agreement. The Complaint further alleges that neither party terminated the Lease.

Thus, when examined in a light most favorable to the Plaintiffs, Freddie Mac's, the successor landlord, purchase of the Property subject to the lease establishes the requisite privity of contract. In order to eject a tenant under N.C. law, the landlord must prove, with requisite notice to the tenant, the default of that tenant to an officer of the judiciary. The Defendants in this case have not done so, they merely instituted ejectment proceedings before the Pitt County Clerk of Superior Court. This was done without proper notice to the Plaintiffs and did not allow the Plaintiffs to argue their case, violating North Carolina Landlord Tenant law in the process.

**C. <u>Wrongful Interference with Contract</u>**

Plaintiff concedes that it cannot maintain a claim for wrongful interference with contract claim against Defendant Freddie Mac, on the basis that Freddie Mac is a party to the contract at issue as discussed above. The contract at issue in this litigation is the lease entered into between

Plaintiff and Mills on March 15, 2013, and renewed by operation of law.  Defendant Freddie

Mac succeeded to the lease on March 3, 2014 when it acquired title to the property and as such

became a party to the contract.  The wrongful interference with contract claim is against

Defendant Brock and Scott only.

A pleading stating a claim for relief must contain "a demand for the relief sought, which

may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  Further,

"[i]f a party makes alternative statements, the pleading is sufficient if any one of them is

sufficient."  Fed. R. Civ. P. 8(d)(2).  "A party may state as many separate claims or defenses as it

has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  "Pleadings must be construed so as to

do justice."  Fed. R. Civ. P. 8(e).

In order to  state a claim for tortious interference with a contract, under North Carolina

law, the Plaintiff must allege five elements:

(1) A valid contract between the plaintiff and a third person which confers upon
    the plaintiff a contractual right against a third person;
(2) Defendant knows of the contract;
(3) The defendant intentionally induces the third person not to perform the
    contract;
(4) And in doing so acts without justification;
(5) Resulting in actual damage to the plaintiff.

*Embree Const. Grp., Inc. v. Fafcor, Inc.,* 330 N.C. 487, 499, 411 S.E.2d 916, 924 (1992).

"Unless it appears on the face of the complaint that a defendant's conduct was justified,

justification is an affirmative defense."  *Id* citing *Freed v. Manchester Serv., Inc.,* 165 Cal. App.

2d 186, 190, 331 P.2d 689, 691 (1958).  "In the context of tortious interference with contract, the

proper place in the pleadings for allegations of qualified privilege is in defendants answer."  *Id* at

501 citing *Presnell v. Pell,* 298 N.C. 715, 720, 260 S.E.2d 611, 614 (1979).  "Therefore, insofar

as questions regarding the scope of defendants' privilege are evoked by the allegation that

defendants acted "without justification," plaintiff's complaint need not address such questions in order to withstand a motion to dismiss for failure to state a claim." *Id.*

The Plaintiffs allege, in their Complaint, the existence of a contract. Compl. ¶¶ 7,8,9,12. By pleading the existence of the lease, Plaintiffs have shown, for purposes of this motion, that there was a contract between the Plaintiffs and Freddie Mac, by means of the Freddie Mac's purchase. Thus, the Plaintiffs have sufficiently plead a valid contract between the Plaintiff and a third person, Freddie Mac. Plaintiff also properly alleged that Brock & Scott knew of this contract. Compl. ¶ 12 and Ex. A. Plaintiffs also alleged many actions showing Brock & Scott's interference with said contract. Complaint *generally.* As discussed *infra,* per Fed. R. Civ. P. 9(b), intent may be plead generally. However, the allegations within the complaint tend to show the intentional nature of Brock & Scott's interference with the valid lease contract.

The Plaintiffs, in their Complaint, alleged that "[u]pon information and belief the firm of Brock & Scott, PLLC is acting as an agent of Freddie Mac in regards to the property." Complaint ¶ 10. The Plaintiffs also alleged that Brock & Scott "have no legitimate justification for its actions." Complaint ¶ 42. Brock & Scott's raising of the defenses of Agency and Justification are improper at the current time. As discussed in *Embree,* the proper place to raise this justification and or agent defense is not through a motion to dismiss for failure to state a claim. Further, the allegation that Brock & Scott is acting as an agent of Freddie Mac should be read as an alternative pleading "so as to do justice" for the purposes of this motion, pursuant to Fed. R. Civ. P. 8(e). Thus, the Complaint properly stated the elements required to withstand a motion to dismiss for failure to state a claim.

D. **Trespass**

As discussed in detail *supra,* the Plaintiffs clearly had a possessory interest in the property. The Plaintiffs were tenants when Freddie Mac obtained title to the Property, and as alleged, Freddie Mac did not terminate the lease. The Defendants also make the argument that the Plaintiffs did not allege any "damages suffered as a result of the alleged trespass."

Though damages are an element to trespass in North Carolina, '[a]ctual damages do not have to be proven, since any unauthorized entry at least entitles plaintiff to nominal damages." *Taha v. Thompson,* 120 N.C. App. 697, 704, 463 S.E.2d 553, 557 (1995) citing *Keziah v. R.R.,* 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968). Further, in *Taha* the plaintiff's "evidence show[ed] that a locksmith under defendants' instruction entered onto the leased premises without plaintiff's authorization and attempted to change the locks. Viewed in a light most favorable to plaintiff, this evidence is sufficient to support each element of a trespass claim." *Id.*

The Complaint alleges that the Defendants forcibly removed the Plaintiffs from their residence, that the Defendants, or agents thereof, entered upon the Plaintiffs' property, and that the Defendants were not authorized to do so. Further, the Complaint also alleges that the Plaintiffs were damaged by these actions. As shown in *Taha,* a locksmith changing the locks under the defendants' instructions, without the consent of the lessee is enough to "support each element of a trespass claim." In the present case the mere allegation that the Defendants forcibly removed the Plaintiffs from the property, their personal residence, when viewed in a light most favorable to the Plaintiffs, is enough to sustain an action of trespass in a Motion to Dismiss based upon a failure to state a claim. However, the additional allegations of unauthorized entry upon the property and damages coupled with the forcible removal of the Plaintiffs is sufficient to survive this motion to dismiss.

15

E. **Trespass to Chattel**

As discussed in detail *supra,* the Plaintiffs had a possessory interest in the property.  In order to sustain a claim for trespass to chattels, the Plaintiffs must have "demonstrate[d] that [they] had either actual or constructive possession of the property in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the property." *Kirschbaum v. McLaurin Parking Co.,* 188 N.C. App. 782, 786-87, 656 S.E.2d 683, 686 (2008).

The Defendants' Memorandum does not refute that the Plaintiffs had actual or constructive possession of their personal property.  The issue presented is whether the Defendants' actions were unauthorized and unlawful.  It is apparent throughout the allegations of the Complaint that the actions of the Defendants were unauthorized by the Plaintiffs.  The PTFA, when viewed in conjunction with N.C. Landlord Tenant law relating to the eviction of a tenant, show that the Plaintiffs still had a possessory interest in the Property.  The allegations of the Complaint show that the Defendants forcibly removed the Plaintiffs, without notice addressed to them.  The Defendants did not institute any legal proceedings against the Plaintiffs.  The Plaintiffs were tenants.  The Tenants were improperly ejected.  Finally, the ejection caused the Plaintiffs to lose the use and enjoyment of their personal property contained within the residence.

The Defendants also imply that, since notice was given to the "current occupants" of the Property, the Plaintiffs were on notice, and they should have removed their property.  This implication seems to rely on two distinct arguments.  First, the erroneous argument that the notice given to the Plaintiffs was sufficient to eject them from the residence, which this memorandum as argued in detail *supra*.

Second, the Defendants argue that the Plaintiffs actions contributed the loss of use of their property.  In North Carolina, contributory negligence is an absolute bar to recovery for negligence actions.  *See Cobo v. Raba,* 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998) citing *Brewer v. Harris,* 279 N.C. 288, 298, 182 S.E.2d 345, 350 (1971).  However, contributory negligence is not a bar to an intentional tort.  *Jenkins v. N.C. Dep't of Motor Vehicles,* 244 N.C. 560, 564, 94S.E.2d 577, 581 (1956) citing *Stewart v. Cab Co.,* 227 N.C. 368, 42 S.E.2d 405 (1947); *Ballew v. R.R.,* 186 N.C. 704, 120 S.E. 334 (1923); *Fry v. Utilities Co.,* 193 N.C. 281, 111 S.E. 354 (1922).  Finally, the Defendants' argument is illogical, in that, such an argument would not allow recovery from anyone for a cause of action of trespass to chattel to any plaintiff, who had any "notice," no matter how deficient, that their property may be taken from them, effectively removing this tort from the law.

F. **Conversion**

The Defendants' Memorandum, in addition to the same arguments addressed in the Trespass to Chattels section, argues that there is no allegation of the alteration of the property's condition, or exclusion of the owners' rights.  Defendants' Memorandum pg. 11.  The Defendants' Memorandum apparently disregards the fact that the Complaint specifically alleges "Plaintiffs have not had the ability to use and enjoy their personal property that is still contained in the residence."  Compl. ¶ 53.  This allegation alone is sufficient to allege that Defendants held the personal property to "the exclusion of [the] owner's rights."  However, at the time the Complaint was filed, the Plaintiffs, due to their inability to use and enjoy their personal property, had no knowledge of the condition of their personal property.  As such, the allegations are sufficient to survive a motion to dismiss.  Whether the exclusion, or alteration, experienced by the Plaintiffs suffices to meet the element required for a conversion is a question of fact.

### G. **Intentional Infliction of Emotional Distress.**

To state a claim for intentional infliction of emotional distress under North Carolina law, Plaintiff must allege, "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another." *Pierce v. Atlantic Group, Inc.*, 724 S.E.2d 568, 577 (N.C. Ct. App. 2012). The "[d]efendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency." *Id.* Liability for intentional infliction of emotional distress "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Chidnese v. Chidnese*, 210 N.C.App. 299, 316, 708 S.E.2d 725, 738 (2011). As argued *infra* under the claim for unfair and deceptive trade practices, the actions of Freddie Mac were clearly "outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency." Further, the forcible, unlawful removal of the Plaintiffs from their home clearly exceeds mere "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

The actions of the Defendants, Freddie Mac, that constitute a basis for the intentional infliction of emotional distress rely on the assumption that Defendant Brock and Scott was acting on behalf of Freddie Mac. Admittedly, Plaintiffs have not had the opportunity in discovery to determine the scope of Brock and Scott's agency for Freddie Mac in their attempts to evict the Plaintiff. Further, instead of merely threatening eviction of the tenants, Brock & Scott with full knowledge of the existence of the lease caused an Ejectment Notice to be sent by the Sheriff to the tenants. This Notice, and subsequent eviction was done without following the statutory procedures for summary ejectment, through use of a questionable affidavit. Comp. ¶22. These actions, as alleged, are far greater than any mere threat or annoyance. These actions were all attempts to remove the tenants from their home and were intentional actions of Brock & Scott,

and upon information and belief, attributable to Freddie Mac. These actions clearly rise above the level of mere threats and annoyances.

Fed. R. Civ. P. 9(b) provides that "[m]alice, intent, knowledge and other condition of mind of a person, may be averred generally." The Complaint makes it clear, through the various allegations, that Brock & Scott conducted these actions with the knowledge and intention of removing the tenants from their home, in violation of the lease that Brock & Scott admitted existed. *See* Complaint ¶ 18. Thus, meeting the general pleading requirement of Fed. R. Civ. P. 9(b). Further, Paragraph 45 of the Complaint specifically alleges that "The actions of the Defendants were intended to cause severe emotional distress to the Tenant." Complaint ¶45.

As the case proceeds and the discovery process discloses the relationship between Brock and Scott and Freddie Mac, it may arise that Brock and Scott's actions are not attributable to Freddie Mac or that Plaintiffs' emotional state does not rise to the level of severe emotional distress required. However, dismissal at this preliminary stage is unwarranted and the Plaintiffs have pled the necessary elements for an intentional infliction of emotional distress in their Complaint.

### H. Unfair and Deceptive Trade Practices

As discussed *supra,* Fed. R. Civ. P. 8 is a liberal standard requiring only that a complaint set forth a "short and plain statement" that gives a defendant fair notice of plaintiff's grounds for entitlement for relief.

A claim of Unfair and Deceptive Trade Practices ("UDTP") under N.C.G.S. § 75-1.1 requires proof of three elements: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant. *Craven v. SEIU COPE*, 188 N.C. App. 814, 819, 656 S.E.2d 729, 733 (2008). The Plaintiffs have alleged each of these

19

elements with the specificity required under Fed. R. Civ. P. 8.  The Plaintiffs included specific

allegations regarding the nature of the business, timing, circumstances and parties surrounding

the unfair and deceptive acts alleged.

The actions of the Defendants' were in or affecting commerce.  "The [UDTP] Act was

clearly intended to benefit consumers."  *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C.

578, 592 (1991).  "Commerce in its broadest sense comprehends intercourse for the purposes of

trade in any form."  *In re Arnold,* 2009 Bankr. LEXIS 4213, *16 (Bankr. M.D.N.C. December

20, 2009).  "The statute itself states that "'commerce' includes *all* business activities, *however*

*denominated.*"  *Stoffo v. Kernodle,* 118 N.C. App. 580, 583, 455 S.E.2d 869, 871 (1995)

(emphasis in original).  "[T]he purpose of G.S. 75-1.1 is to provide a civil means to maintain

ethical standards of dealings between persons engaged in business and the consuming public in

this State and [it] applies to dealings between buyers and sellers at **all** levels of commerce." *Id*

*(quoting United Virginia Bank v. Air-Lift Associates*, 79 N.C. App. 315, 339 S.E.2d 90, 93

(1986)) (emphasis in original).

"Given the broad consumer protection intent of the statute, combined with case law and

the General Assembly's inclusive definition of the term 'commerce,'…rental of residential

property is 'in or affecting commerce.'"  *Id* at 583.  The "rental of residential housing is 'trade or

commerce' under G.S. 75-1.1."  34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977), cert denied,

299 N.C. 441, 241 S.E.2d 843 (1978).

The Defendants conduct was unfair and deceptive.  "A [trade] practice is unfair when it

offends established public policy as well as when the practice is immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers.  Furthermore, [a] party is guilty of an

unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its

20

power or position." *Walker v. Sloan*, 137 N.C. App. 387, 396, 529 S.E.2d 236, 243 (2000) (internal citations and quotations omitted). Trespass and conversion claims qualify for Unfair and Deceptive acts in North Carolina. See *Taha*, 120 N.C. App. at 704, 463 S.E. 2d at 558; *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), *disc. Review denied*, 295 N.C. 441, 241 S.E.2d 843 (1978).

The allegations of the Complaint, when taken as true, show Freddie Mac purchased residential property at a foreclosure sale. Brock & Scott, either on their own behalf or at the bequest of Freddie Mac threatened the tenants, with eviction and or ejectment. Further, the Defendants ejected the Plaintiffs through the foreclosure proceeding. These unfounded repeated threats were immoral, unethical, oppressive, unscrupulous and clearly injurious to said tenants. The threats alone should qualify as unfair and deceptive, as Freddie Mac, through Brock and Scott was engaging in "conduct which amount[ed] to an inequitable assertion of its power or position." *Id.* That the threats were followed through on, through the eviction of the Plaintiffs being ejected, clearly meets the standard required under N.C. Gen Stat 75.1 for unfair and deceptive trade practices. Furthermore, it cannot be seriously argued that Freddie Mac does not engage in commerce, as much of their business involves the purchase, sale and leasing of residential units throughout the country. The "rental of residential housing is 'trade or commerce' under G.S. 75-1.1." *Love,* 34 N.C. App. at 516, 239 S.E.2d at 583; *see also Creekside Apartments v. Poteat,* 116 N.C. App. 26, 446 S.E. 2d 826 (1994); *Spinks v. Taylor,* 303 N.C. 256, 278 S.E.2d 501 (1981); *Davis Lake Community Ass'n, Inc. v. Feldmann,* 138 N.C. App. 292, 530 S.E.2d 865; *Reid v. Ayers,* 138 N.C. App. 261, 531 S.E.2d 231 (2000).

There can be no question that the foregoing allegations sufficiently allege a claim under Fed. R. Civ. P. 8 and N.C.G.S. § 75-1.1 in addition to establishing the type of conduct meant to

be governed by North Carolina's UDTP Act. *See United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 319, 339 S.E.2d 90, 93 (1986) ("The purpose of this section is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State…."). As such the Court should allow Plaintiffs to proceed with their unfair and deceptive trade practices claim. The Defendants argue that a mere breach of contract cannot be the basis for an Unfair and Deceptive Trade Practice claim, to which they are correct. However the forcible, unlawful removal of a family from its residence, without due process of law, is no mere breach of contract, but an attack on one of the fundamental tenants of our society, that we are safe within our home from unlawful actions. It is for this very reason that North Carolina requires that landlords evict tenants through judicial action, specifically the summary ejectment process, which the Defendants did not do.

## SUMMARY

For the reasons stated in this Memorandum of law, Plaintiff respectfully requests the Court to deny Defendants' Motion to Dismiss for failure to state a claim. In the alternative, should the Court determine that any of Defendants' arguments have merit, that they have leave of the Court to amend their Complaint freely, as no responsive pleading has yet been filed.

This the 25th day of August, 2014.

*/s/ Steven F. Johnson II*
Jeremy Clayton King
N.C. Bar No. 28620
Steven F. Johnson II
N.C. Bar No. 44500
Lanier, King & Paysour, PLLC
108 S Pitt Street
Greenville, NC 27834
Telephone: 252-752-5505
Facsimile: 252-752-4191
*Attorneys for Plaintiff*

22

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2014, a copy of the foregoing pleading, with any and all attachments, was filed with the Clerk of Court via ECF and served via First-Class Mail, postage Prepaid, addressed to:

Franklin Greene
Brock and Scott, PLLC
5121 Parkway Plaza Blvd
Charlotte, NC 28217
*Attorney for Defendants*

/s/ *Steven F. Johnson II*
Jeremy Clayton King
N.C. Bar No.  28620
Steven F. Johnson II
N.C. Bar No. 44500
Lanier, King & Paysour, PLLC
108 S Pitt Street
Greenville, NC  27834
Telephone:  252-752-5505
Facsimile:  252-752-4191
*Attorneys for Plaintiff*

23