IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-129-D

SHONTAY HOUSE, )
and MARY VEGA, )
 )
          Plaintiffs, )
 )
v. ) **ORDER**
 )
FEDERAL HOME LOAN MORTGAGE )
CORPORATION, and )
BROCK & SCOTT, PLLC, )
 )
          Defendants. )

On July 30, 2014, defendants Federal Home Loan Mortgage Corporation ("Freddie Mac") and Brock & Scott, PLLC ("Brock & Scott"), moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted [D.E. 5]. See Fed. R. Civ. P. 12(b)(6). Plaintiffs Shontay House and Mary Vega ("plaintiffs") responded in opposition [D.E. 7], and defendants replied [D.E. 8]. As explained below, the motion to dismiss is granted in part and denied in part.

I.

On March 15, 2013, plaintiffs ("the Renters") entered into a one-year lease agreement with Steve Mills ("the mortgagor") to rent his residential property in Greenville, North Carolina ("the rental property"). Compl. [D.E. 1-2] ¶ 7–8. In February 2014, the mortgagor and the rental property were the subjects of a foreclosure action. Id. ¶ 11. On February 5, 2014, foreclosure took place. Id. On February 17, 2014, equitable title to the rental property transferred to Freddie Mac,[1] and Freddie

---

[1] Defendants' brief cites two different dates as the date of equitable title transfer. See Defs.' Mem. Supp. Mot. Dismiss [D.E. 6] 3 (claiming that equitable title transferred on February 18, 2014); Defs.' Mem. Supp. Mot. Dismiss 7 (claiming that equitable title transferred on February 17, 2014). The court assumes that the proper date was February 17, 2014, because that date was deemed the "last date for upset bid" and was the first Monday following the 10-day deadline from the report of sale filing. See Report of Foreclosure Sale [D.E. 6-3] 2; N.C. Gen. Stat. § 45-21.27(a); N.C. Gen. Stat. § 45-21.29A; Defs.' Mem. Supp. Mot. Dismiss 7.

Mac recorded the title transfer on March 3, 2014. Compl. ¶ 11.

On June 5, 2014, Brock & Scott, acting on behalf of Freddie Mac, applied for writ of possession with the clerk of Pitt County Superior Court. Defs.' Mem. Supp. Mot. Dismiss [D.E. 6] 4; Writ App. [D.E. 6-2].[2] The clerk granted the application and the sheriff served the Renters with an ejectment notice. See [D.E. 6-4]; Comp. ¶ 14. The ejectment notice stated that if the Renters failed to vacate the premises by June 16, 2014, the sheriff would forcibly eject them. Id. The Renters did not vacate the premises by June 16, 2014. Thus, the sheriff evicted them on that date. Compl. ¶ 15.

On June 23, 2014, the Renters filed a complaint in Pitt County Superior Court. In the complaint, the Renters asserted nine claims under North Carolina law: (1) motion for temporary restraining order; (2) motion for preliminary injunction; (3) breach of lease; (4) wrongful interference with contract; (5) trespass; (6) trespass to chattel; (7) conversion; (8) intentional infliction of emotional distress; and (9) unfair and deceptive trade practices. Id. ¶¶ 21–72. On June 24, 2014, the Pitt County Superior Court entered an order enjoining any further attempt to eject the Renters from the rental property. See [D.E. 1-2] 12–13. The Superior Court scheduled a preliminary injunction hearing for July 3, 2014. Id. 13. However, before the hearing, the Renters agreed to voluntarily vacate the premises on July 7, 2014, rendering the hearing and the Renters' claims for injunctive relief moot. See Pls.' Resp. 2 n.1. On July 23, 2014, Freddie Mac removed the action to this court pursuant to 28 U.S.C. §§ 1331 and 1442 and 12 U.S.C. § 1452(f).

II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure

---

[2] Defendants contend that they sent a "Notice to Vacate" to the rental property on February 28, 2014. Defs.' Mem. Supp. Mot. Dismiss 3. Defendants attached a copy of the notice to their memorandum. See [D.E. 6-1]. The notice is addressed to "Steven E. Mills and Autumn N. Mills or the Current Occupants" and states that tenants of the mortgagor must vacate within 90 days. The Renters deny having personally received this or any other notice. See Comp. ¶ 18; Pls.' Resp. [D.E. 7] 7. Defendants have not attached evidence to the contrary. Thus, the court assumes that the Renters were not personally notified to vacate before June 5, 2014.

2

to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); see Vitol, S.A., 708 F.3d at 543. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. Twombly, 550 U.S. at 555 & n.3; Vitol, S.A., 708 F.3d at 543; Francis, 588 F.3d at 193.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, in considering a motion to dismiss, a court must focus on the complaint. However, the court may also consider documents attached to the complaint if they "are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

A.

Initially, the court must determine the substantive law that governs this action. "[A]ll civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions,

3

without regard to amount or value . . . ." 12 U.S.C. § 1452(f). Section 1452(f) imparts federal question jurisdiction and requires the court to apply federal common law. See, e.g., Rose v. Fed. Home Loan Mortg. Corp., No. 1:09-cv-170, 2010 WL 2640460, at *6 (W.D. Mich. June 30, 2010) (unpublished); Dupuis v. Fed. Home Loan Mortg. Corp., 879 F. Supp. 139, 142 (D. Me. 1995). However, where there is no applicable federal common law or where there is no "demonstrated need for a uniform national rule," district courts should "generally incorporate state law as the rule of decision." Rose, 2010 WL 2640460, at *6; see Fed. Home Loan Mortg. Corp. v. Riverdale Bank, No. 92 C 1332, 1992 WL 73539, at *2 (N.D. Ill. March 27, 1992) (unpublished). In determining whether to incorporate state law as the federal rule of decision, the court considers three factors: (1) the need for a nationally uniform body of law; (2) whether the application of state law would frustrate specific objectives of a federal program; and (3) the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. United States v. Kimbell Foods Inc., 440 U.S. 715, 728–29 (1979). Thus, in Riverdale Bank, the court applied the three Kimbell Foods factors, held that "there is no need for national uniformity in the law of real property," and applied Illinois law. See Riverdale Bank, 1992 WL 73539, at *2. Likewise, in Rose, the court applied Michigan law, noting that Freddie Mac "relie[d] exclusively on [state] law" and did "not suggest the existence of any need for a uniform federal rule of decision or a significant conflict between federal interests and [state] mortgage law." Rose, 2010 WL 2640460, at *6.

Here, the parties did not discuss choice of law in their briefs and did not provide any reason to depart from North Carolina law. Rather, the parties cite exclusively to North Carolina law. Accordingly, having considered the Kimbell Foods factors, the court applies North Carolina law as the federal rule of decision.

B.

This case requires the court to analyze the Protecting Tenants at Foreclosure Act ("PTFA"). See Pub. L. No. 111–22, § 702, 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note).

4

Congress enacted the PTFA in the midst of the 2009 financial crisis to protect "bona fide" tenants of rental property subject to foreclosure. See 155 Cong. Rec. S5110–11 (daily ed. May 5, 2009) (statement of Sen. Kerry). The PTFA terminated on December 31, 2014. See 42 U.S.C. § 1437f (note under "Termination of Amendments").

Subject to a few exceptions, the PTFA applies to bona fide tenants who are in rental property that is foreclosed upon during the lease term. The PTFA provides such bona fide tenants the ability to remain in their rental residence until the end of the lease term, or to receive a minimum of 90 days' notice to vacate the rental residence. See Pub. L. No. 111–22, § 702, 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note). The 90-day PTFA notice requirement also applies to bona fide tenants without a lease or with a lease terminable at will. Id. at § 702(a)(2)(B).

Although the PTFA requires pretermination notice, the PTFA does not create a private right of action. See, e.g., Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 160 (6th Cir. 2014); Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1169–73 (9th Cir. 2013); Fulcrum Enters., LLC v. Bank of Am., N.A., No. H-13-1930, 2014 WL 1669098, at *5 (S.D. Tex. Apr. 25, 2014) (unpublished). Rather, a bona fide tenant can use the PTFA "as a defense to an unlawful detainer action," or "[i]n cases where successors in interest do not initiate judicial proceedings, tenants . . . . must be permitted to use available state law causes of action, such as wrongful eviction, to enforce the PTFA's protections." Mik, 743 F.3d at 165, 167; see Fulcrum Enters., LLC, 2014 WL 1669098, at *5 n.46.

Section 702(a) of the PTFA states:

> (a) In general. – In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to –
> 
> (1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
> 
> (2) the rights of any bona fide tenant –
> 
> (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the

5

>    receipt by the tenant of the 90 day notice under paragraph (1); or
>
>    (B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),
>
> except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

Pub. L. No. 111–22, § 702(a), 123 Stat. 1632, 1660–61.

Section 702(b) of the PTFA states:

> For purposes of this section, a lease or tenancy shall be considered bona fide only if--
>
> (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

Id. § 702(b).

Initially, defendants contend that the Renters did not properly plead their status as bona fide tenants and, therefore, that the court should dismiss their complaint. Defs.' Reply [D.E. 8] 2–3. The Renters respond that they adequately pleaded their status as bona fide tenants and "are not aware of any other affirmative pleading requirement to put Defendants on notice of their claim." Pls.' Resp. 6.

In their complaint, the Renters asserted their status as tenants and claimed the existence of a landlord-tenant relationship between themselves and Freddie Mac. See Compl. ¶¶ 7–9, 38–39. The Renters also pleaded facts encompassing their bona fide status, such as their lease agreement and rental payments with the original landlord and that their lease preexisted the foreclosure action. See id. ¶¶ 7–11. Although the Renters did not use the term bona fide tenant or cite the PTFA, they pleaded facts sufficient to plausibly show they are "bona fide" tenants under the PTFA. See Johnson v. City of Shelby, 135 S. Ct. 346, 346–47 (2014) (per curiam).

Next, the court analyzes whether, under the PTFA, a tenancy survives foreclosure and a new

6

landlord-tenant relationship is established between the successor in interest and the bona fide tenants. Defendants argue that the PTFA does not preempt North Carolina law extinguishing tenancies at foreclosure. See Dixieland Realty Co. v. Wysor, 272 N.C. 172, 175, 158 S.E.2d 7, 10 (1967) ("Ordinarily, all encumbrances and liens which the mortgagor or trustor imposed on the property subsequent to the execution and recording of the senior mortgage or deed of trust will be extinguished by sale under foreclosure of the senior instrument."); In re Foreclosure of Lien by Ridgeloch Homeowners Ass'n, Inc. Against McNeill, 182 N.C. App. 464, 469, 642 S.E.2d 532, 536 (2007). According to defendants, the PTFA provides tenants only with a right to notice and a right to continue to occupy the premises for a prescribed period of time. Defs.' Reply 4–5. The Renters disagree and contend that the PTFA preempts inconsistent state law and converts a successor in interest (here, Freddie Mac) into a landlord "by operation of law." Pls.' Resp. 9–11. As such, according to the Renters, Freddie Mac's only legal method of eviction against the Renters was a summary ejectment proceeding under N.C. Gen. Stat. § 42-25.6,[3] not a writ of possession proceeding under N.C. Gen. Stat. § 45-21.29(k).[4]

---

[3] N.C. Gen. Stat. § 42-25.6 states:

It is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed or otherwise constructively or actually removed from his dwelling unit only in accordance with the procedure prescribed in Article 3 or Article 7 of this Chapter.

N.C. Gen. Stat. § 42-25.6.

[4] N.C. Gen. Stat. § 45-21.29(k) states:

Orders for possession of real property sold pursuant to this Article, in favor of the purchaser and against any party or parties in possession at the time of application therefor, may be issued by the clerk of the superior court of the county in which the property is sold if all of the following apply:

(1) The property has been sold in the exercise of the power of sale contained in any mortgage, deed of trust, leasehold mortgage, leasehold deed of trust, or a power of sale authorized by any other statutory provisions.

(2) Repealed by S.L. 1993-305, § 18 eff. Oct.1, 1993.

(2a) The provisions of this Article have been complied with.

7

In order to resolve the dispute, the court focuses on the PTFA's text. The PTFA states that the successor in interest "shall assume such interest subject to ... the *rights* of any bona fide tenant." Pub. L. No. 111-22, § 702(a)(2), 123 Stat. 1632, 1660–61 (emphasis added). Congress's use of the plural term "rights" suggests that, following foreclosure, the "bona fide tenant" retains more than the right of notice and the right of tenancy for the PTFA period. Tellingly, in both subsections (A) and (B) of section 702(a)(2), Congress separated the right to notice from the other "rights of any bona fide tenant" by the use of a comma followed by "subject to the receipt by the tenant of the 90-day notice under paragraph (1)." Id. §§ 702(a)(2)(A), (B). This separation clarifies that although a tenant is entitled to a minimum of 90 days' notice, the 90-day notice does not fit within the category of "rights" that the successor in interest takes its interest subject to. Moreover, the plain language in subsection (B) of section 702(a)(2) illustrates that the plural "rights" of a bona fide tenant without a lease survive foreclosure but are subject to a 90-day notice to vacate. Id. § 702(a)(2)(B). Thus, the tenancy rights that the PTFA protects are not limited to the right to notice and the right to continued occupancy. Rather, Congress's use of the term "rights" logically refers to the customary rights of tenancy under traditional state landlord-tenant law. Accordingly, under the PTFA, a tenancy survives foreclosure for a minimum of 90 days. See, e.g., Erlach v. Sierra Asset Servicing, LLC, 173 Cal. Rptr. 3d 159, 172–73 (Cal. Ct. App. 2014); Nativi v. Deutsche Bank Nat'l Trust Co.,

---

> (3) The sale has been consummated, and the purchase price has been paid.
>
> (4) The purchaser has acquired title to and is entitled to possession of the real property sold.
>
> (5) Ten days' notice has been given to the party or parties who remain in possession at the time application is made, or, in the case of residential property containing 15 or more rental units, 30 days' notice has been given to the party or parties who remain in possession at the time the application is made.
>
> (6) Application is made by petition to the clerk by the mortgagee, the trustee, the purchaser of the property, or any authorized representative of the mortgagee, trustee, or purchaser of the property.

N.C. Gen. Stat. § 45-21.29(k).

167 Cal. Rptr. 3d 173, 185–94 (Cal. Ct. App. 2014); Mason v. Wells Fargo Bank, N.A., No. 05-12-01590-CV, 2013 WL 5948077, *5–6 (Tex. Ct. App. Nov. 5, 2013). However, if the remaining lease term is longer than 90 days and the successor in interest does not sell the unit to a purchaser who will occupy it as a primary residence, the tenancy will continue until the end of the remaining lease term. See Pub. L. No. 111–22, § 702(a)(2)(A), 123 Stat. 1632, 1661.

The PTFA's purpose bolsters the conclusion that, where the PTFA applies, the tenancy survives foreclosure and the successor in interest assumes the landlord's role, including the landlord's rights and responsibilities under state law.[5] Indeed, it makes little sense to construe the PTFA in a manner that leaves tenants without a landlord and without the ability to enjoy the covenants in their lease under state law for the remainder of their lease term. Likewise, given the clear right to continued occupancy, it makes little sense to construe the PTFA to provide windfalls to bona fide tenants that would arise if the tenancy (including responsibilities that the tenant owes the landlord under state law) did not survive foreclosure. However, if the court accepted defendants' position, then possible windfalls abound. For example, the PTFA allows a bona fide tenant to remain in the residence for at least 90 days and possibly until the end of his lease term. If there is no landlord-tenant relationship under state law, the tenant would not be bound by the lease terms and could live rent-free for the remainder of the lease. Furthermore, under the defendants' proposed

---

[5] Cf. Gold, Allyson, Interpreting The Protecting Tenants at Foreclosure Act of 2009, 19 J. Affordable Housing & Community Dev. L. 205, 209–10 (Winter 2010):

> Narrowly construed, the phrase [in section 702(a)(2)] "subject to the end of the remaining term of the lease" may be interpreted to only bind the successor in interest to one covenant of the lease agreement, its duration. Under this construction a successor in interest would not be held to any other lease covenants, which may harm tenants; if the other covenants of the lease are not honored, tenants no longer receive the benefit of their original bargain with the landlord. Conversely, a broad construction of the phrase would bind the successor in interest to all covenants originally entered into by the defaulting mortgagor, with the successor in interest stepping into the shoes of the mortgagor.

9

construction, the tenant would not be subject to the care and upkeep conditions in the lease, leaving the successor in interest with no power to protect its property. Although the PTFA was meant to protect bona fide tenants from being forced to vacate mid-lease or on less than 90-days' notice, this court declines to construe the PTFA to create such absurd results for either the tenant or the successor in interest. Cf. United States v. Turkette, 452 U.S. 576, 580 (1981) (court should construe a statute to avoid absurd results); United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 543 (1940) (same).

Finally, that the PTFA can be used as a defense in an unlawful detainer or eviction action bolsters the conclusion that a landlord-tenant relationship exists between the successor in interest and the bona fide tenant. See Mik, 743 F.3d at 165; Logan, 722 F.3d at 1173. After all, such a relationship is often necessary to institute a state unlawful detainer action or a summary ejectment proceeding. See, e.g., Coll. Heights Credit Union v. Boyd, 104 N.C. App. 494, 497, 409 S.E.2d 742, 743 (1991) (recognizing that in North Carolina the summary ejectment remedy "is restricted to cases where the relation between the parties is simply that of landlord and tenant"); accord Indemnity Ins. Co. of N. Am. v. City of Tacoma, 158 Wash. App. 1022, 2010 WL 4290648, at *10 (2010) (unpublished table opinion) (applying Washington law); AgriBank FCB v. Cross Timbers Ranch, Inc., 919 S.W.2d 256, 260 (Mo. Ct. App. 1996) (per curiam) (applying Missouri law); Beecher v. Spain, 140 Minn. 255, 258, 167 N.W. 793, 794 (1918) (applying Minnesota law).

In sum, under the PTFA, the tenancy of a bona fide tenant survives for at least 90 days following foreclosure and possibly until the end of the lease term. In much the same way that North Carolina law permits a property owner to sell his rental property and have his buyer assume the tenancy by operation of law, see, e.g., Perkins v. Langdon, 237 N.C. 159, 164, 74 S.E.2d 634, 639 (1953), the PTFA creates a landlord-tenant relationship between the successor in interest and the bona fide tenant for the PTFA's requisite time period and preempts conflicting state laws. See Erlach, 173 Cal. Rptr. 3d at 172–73; Nativi, 167 Cal. Rptr. 3d at 185–94; Mason v. Wells Fargo

10

Bank, N.A., 2013 WL 5948077, at *5–6.

C.

The Renters' remaining claims are: (1) breach of lease; (2) wrongful interference with contract; (3) trespass; (4) trespass to chattel; (5) conversion; (6) intentional infliction of emotional distress; and (7) unfair and deceptive trade practices. The court examines each claim seriatim.

The Renters claim that defendants breached the lease and violated the warranty of quiet enjoyment by threatening to eject the Renters without cause and without the 90-day notice required by the PTFA. See Compl. ¶¶ 18–20, 33–36. Under North Carolina law, "[u]nauthorized entry and repossession of the leased premises by the lessors or those acting under their direction constitutes an invasion of the lessee's rights, in short, a breach of the lease agreement." Andrews & Knowles Produce Co. v. Currin, 243 N.C. 131, 135–36, 90 S.E.2d 228, 231 (1955); see Fishel v. Browning, 145 N.C. 71, 58 S.E. 759, 760 (1907); Marina Food Assocs., Inc. v. Marina Rest. Inc., 100 N.C. App. 82, 92, 394 S.E.2d 824, 830 (1990) ("An act of a landlord which deprives his tenant of that beneficial enjoyment of his premises to which he is entitled under his lease, causing the tenant to abandon them, amounts to a constructive eviction."). Having pleaded facts sufficient to show unauthorized repossession of the leased premises, the Renters have plausibly stated a claim for breach of the warranty of quiet enjoyment. Thus, the court denies the motion to dismiss this claim.

In order to state a claim for wrongful interference with contract, the Renters must plausibly allege five elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in so doing acts without justification; (5) resulting in actual damage to the plaintiff.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The Renters seek relief on this claim solely against Brock & Scott. See Compl. ¶¶ 37–43. The Renters, however, have

11

failed to plausibly allege that Brock & Scott intentionally induced Freddie Mac to not perform the contract or that Brock & Scott did so without justification. Thus, the court grants Brock & Scott's motion to dismiss this claim.

In order to state a trespass claim, a plaintiff must plausibly allege that "(1) plaintiff was in possession of the land at the time of the alleged trespass; (2) defendant made an unauthorized entry on the land; and (3) plaintiff was damaged by the alleged invasion of his property rights." Taha v. Thompson, 120 N.C. App. 697, 703–04, 463 S.E.2d 553, 557 (1995); see Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003). Under North Carolina law, "[i]f any lessor, landlord, or agent removes or attempts to remove a tenant from a dwelling unit in any manner contrary to this Article, . . . the lessor, landlord or agent shall be liable to the tenant for damages caused by the tenant's removal or attempted removal." N.C. Gen. Stat. § 42-25.9(a). Here, the Renters plausibly allege that defendants' failure to institute a summary ejectment proceeding caused them to be illegally evicted from their residence. Compl. ¶¶ 18–20. Furthermore, the Renters pleaded facts sufficient to plausibly support the elements of a trespass claim. See Compl. ¶¶ 45–46 (claiming that defendants or their agents entered the Renters' residence without permission on more than one occasion); id. ¶ 49 (claiming that the defendants, or their agents, locked the Renters out of their residence); see Taha, 120 N.C. App. at 704, 463 S.E.2d at 557 (finding a locksmith's entrance onto leased premises to change the locks per a landlord's instruction to be evidence of trespass by the landlord). Thus, the court denies the motion to dismiss this claim.

In order to state a trespass to chattel claim, a plaintiff must plausibly allege "that there was an unauthorized, unlawful interference or dispossession of the property." Vaseleniuck Engine Dev., LLC v. Sabertooth Motorcycles, LLC, 727 S.E.2d 308, 310 (N.C. Ct. App. 2012) (quotation and emphasis omitted); see Fordham v. Eason, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999). The Renters and Freddie Mac were in a landlord-tenant relationship. Thus, the only proper method of eviction under North Carolina law was a summary ejectment proceeding under N.C. Gen. Stat. § 42-

12

25.6. See N.C. Gen. Stat. § 42-25.9(a); Stanley v. Moore, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995); Shepard v. Bonita Vista Props., L.P., 191 N.C. App. 614, 632, 664 S.E.2d 388, 400 (2008). Freddie Mac did not institute such a proceeding. Accordingly, plaintiffs have plausibly alleged that Freddie Mac's eviction of the Renters unlawfully dispossessed them of their property. See Compl. ¶¶ 49–53. Thus, the court denies the motion to dismiss this claim.

Conversion consists of "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Peed v. Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (quotation omitted). Having plausibly alleged facts sufficient to claim unauthorized repossession of the leased premises, the Renters have stated a claim for conversion against Freddie Mac. See Compl. ¶¶ 55–62. Thus, the court denies the motion to dismiss this claim.

"The essential elements of an action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does cause (3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quotation omitted). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (quotation omitted); see Wagoner v. Elkin City Schs.' Bd. of Educ., 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994). Whether conduct is "extreme and outrageous" is a question of law. Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990); see Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544 (E.D.N.C. 2008). The complaint does not plausibly allege a claim for intentional infliction of emotional distress. See Compl. ¶¶ 63–66. Thus, the court grants the motion to dismiss this claim.

In order to state a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), a plaintiff must plausibly allege: "(1) defendants committed an unfair or deceptive act

13

or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted); see Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 226–29 (N.C. 2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). Under the UDTPA, a defendant's conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700 (1992). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Blvd. at Piper Glen, LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

A "tenant is a consumer for purposes of the Act and . . . the leasing of residential property is within the purview of [the UDTPA]." Stanley v. Moore, 113 N.C. App. 523, 525, 439 S.E.2d 250, 251 (1994), overruled on other grounds by Stanley v. Moore, 339 N.C. 717, 454 S.E.2d 225 (1995). Most cases upholding an UDTPA claim in a landlord-tenant context involve situations where "the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs." Foy v. Sprinks, 105 N.C. App. 534, 540, 414 S.E.3d 87, 90 (1992). Although UDTPA claims involving landlords and tenants are not limited to the Foy context, the Renters have not plausibly alleged an UDTPA claim. Thus, the court grants the motion to dismiss this claim.

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 5] in part and DENIES it in part. The following claims survive the motion to dismiss: (1) breach of lease; (2) trespass; (3) trespass to chattel; and (4) conversion. The court orders the parties to participate in a court-hosted mediation with Magistrate Judge Robert B. Jones, Jr.

14

SO ORDERED. This 9 day of January 2015.

                                                 JAMES C. DEVER III
                                                 Chief United States District Judge