IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-129-D

SHONTAY HOUSE, )
and MARY VEGA, )
 )
            Plaintiffs, )
 )
v. ) **ORDER**
 )
FEDERAL HOME LOAN MORTGAGE )
CORPORATION, and )
BROCK & SCOTT PLLC, )
 )
            Defendants. )

On June 23, 2014, Shontay House ("House") and Mary Vega ("Vega") (collectively, "plaintiffs") filed suit against Federal Home Loan Mortgage Corporation ("Freddie Mac") and Brock & Scott PLLC ("Brock & Scott") (collectively, "defendants") in Pitt County Superior Court. See [D.E. 1-2] 2–9. On July 23, 2014, defendants removed plaintiffs' action to this court [D.E. 1]. On July 30, 2014, defendants moved to dismiss plaintiffs' complaint [D.E. 5] and filed a memorandum in support [D.E. 6]. On January 9, 2015, the court granted in part and denied in part defendants' motion to dismiss and allowed plaintiffs' claims for breach of lease, trespass, trespass to chattels, and conversion to proceed. See [D.E. 13].

On January 21, 2016, both parties moved for summary judgment and filed memoranda in support [D.E. 26–29]. As explained below, the court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment.

I.

On March 15, 2013, plaintiffs entered into a one-year agreement with Steven Mills ("Mills") to lease Mills's residential property at 2912 Satterfield Drive in Greenville, North Carolina ("the rental property"). Compl. [D.E. 1-2] ¶¶ 7–8; Ans. [D.E. 15] ¶ 7; see [D.E. 27-2] 2–3. In relevant

part, plaintiffs agreed to pay Mills $1000 per month for twelve months, that the lease would begin on March 15, 2013, and that the lease would expire on March 31, 2014. See [D.E. 27-2] 3. On March 22, 2013, plaintiffs moved into the rental property. House Dep. [D.E. 27-8] 156–57; Vega Dep. [D.E. 27-9] 81. During the first few months of the lease, Vega paid rent directly to Mills using certified funds from the Local Government Federal Credit Union. See Vega Dep. [D.E. 27-9] 63–64; House Dep. [D.E. 27-8] 86–87.

Sometime before November 1, 2013, Mills stopped making mortgage payments on the rental property. See [D.E. 27-3] 6–9. During this period of non-payment, Mills communicated to plaintiffs that he had ceased making mortgage payments. See Vega Dep. [D.E. 27-9] 86; House Dep. [D.E. 27-8] 161. Accordingly, plaintiffs stopped paying rent to him "right before Christmas." Vega Dep. [D.E. 27-9] 87; see House Dep. [D.E. 27-8] 161 ("After you found out Mr. Mills wasn't paying his mortgage . . . did you make any more monthly [rent] payments to him?" "Oh no, that's when — uh-uh, no."). Instead, plaintiffs kept their rent money and put it "[i]n savings." House Dep. [D.E. 27-8] 161.[1]

In February 2014, the rental property was the subject of a foreclosure action and, on February 5, 2014, foreclosure took place. Compl. ¶ 11; Ans. ¶ 11; see [D.E. 27-3] 6 (11/04/2013 foreclosure notice); [D.E. 27-4] (01/09/2014 Pitt County Superior Court foreclosure order); [D.E. 27-6] 2 (02/05/2014 Pitt County Superior Court report of foreclosure sale). On February 18, 2014, Freddie Mac obtained equitable title to the rental property. [D.E. 27-7] 2–3 (02/18/2014 Pitt County deed conveying title to Freddie Mac). At some point after the foreclosure, Brock & Scott communicated

---

[1] Vega inexplicably contradicts this testimony later in the same deposition, stating that she paid rent to Mills up until the eviction. See Vega Dep. [D.E. 27-9] 132. A genuine issue of material fact "is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984); see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); In re Family Dollar FLSA Litig., 637 F.3d 508, 512 (4th Cir. 2011); Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990). Accordingly, the court accepts as true Vega's earlier testimony regarding her cessation of rent payment in late December.

2

with plaintiffs about their lease and asked whether they wished to "stay in the property" or receive "some money to move out," but plaintiffs did not agree to either proposal. See House Dep. [D.E. 27-8] 82; Vega Dep. [D.E. 27-9] 64. On February 28, 2015, Brock & Scott, on behalf of Freddie Mac, mailed "Steve E. Mills and Autumn N. Mills or the Current Occupants . . . [of] 2912 Satterfield Drive, Greenville, NC," a "Notice to Vacate." [D.E. 27-11] 2. In the notice to vacate, Brock & Scott notified plaintiffs that the rental property was foreclosed upon and that eviction would take place within 90 days "in the event [plaintiffs were] . . . bona fide tenant[s] of the mortgagor of the Deed of Trust." Id. 2. Brock & Scott requested notification "within five (5) business days" of plaintiffs' bona-fide-tenant status. Id.

On March 3, 2014, Freddie Mac recorded the title transfer. Compl. ¶ 11; Ans. ¶ 11. On March 31, 2014, plaintiffs' pre-foreclosure lease expired. See [D.E. 27-2] 3. Plaintiffs never paid "Freddie Mac . . . or Brock & Scott . . . any money to stay" in the rental property after Freddie Mac obtained title. House Dep. [D.E. 27-8] 161, 184 ("Isn't it true that you have never paid one dime of rent to Freddie Mac to live at 2912 Satterfield Drive?" "That is so not true." "Who did, who did you pay at Freddie Mac and when did you pay at Freddie Mac?" "Not Freddie Mac, I paid to Steven Mills, and that was to live at 2912 Satterfield Drive.").

On June 5, 2014, 94 days after mailing notice to the plaintiffs, defendants applied for an order for possession under N.C. Gen. Stat. § 45-21.29(k) with the clerk of Pitt County Superior Court. Compl. ¶ 14; Ans. ¶ 14; [D.E. 27-12] 2 (06/05/2014 application for order for possession in Pitt County Superior Court).[2] Also on June 5, 2014, the clerk granted the application, finding that "all of the requisites of the General Statutes of North Carolina ha[d] been complied with as well as all other applicable legal requirements." [D.E. 27-12] 4 (06/05/2014 Pitt County Superior Court order

---

[2] The parties and relevant statutory schemes use the terms "writ of possession," "order for possession," and variants of those two terms, interchangeably. Because N.C. Gen. Stat. § 45-21.29 is titled "orders for possession," the court will use the term "order for possession" throughout the remainder of this order.

3

for possession).

On June 9, 2014, the Pitt County Office of the Sheriff served plaintiffs with an ejectment notice. See Compl. ¶ 14; Ans. ¶ 14; [D.E. 27-13] 4. The ejectment notice stated that the sheriff would forcibly eject plaintiffs if they failed to vacate the rental property by June 16, 2014. Compl. ¶ 14; Ans. ¶ 14; [D.E. 27-13] 4. On June 16, 2014, plaintiffs had failed to vacate the premises, and the sheriff evicted them by locking them out of the residence. House Dep. [D.E. 27-8] 137–39; see [D.E. 28] ¶ 27; Compl. ¶ 15; Ans. ¶ 15. A locksmith accompanied the sheriff and changed the locks on the doors to the rental property. House Dep. [D.E. 27-8] 137. Following the lockout, plaintiffs returned to the residence on a few occasions to obtain personal items, with the permission of a banker named Ray Harrington. Vega Dep. [D.E. 27-9] 98–99; House Dep. [D.E. 27-8] 137.

On June 23, 2014, plaintiffs filed suit in Pitt County Superior Court alleging numerous violations of North Carolina law. Compl. ¶¶ 21–72. On June 24, 2014, Judge Arnold Jones of the Pitt County Superior Court entered an order enjoining Freddie Mac from evicting plaintiffs from the rental property. [D.E. 1-2] 12–13. As a result, plaintiffs returned to the rental property. [D.E. 28] ¶ 30. The Pitt County Superior Court scheduled a preliminary injunction hearing for July 3, 2014. [D.E. 1-2] 13. However, on July 3, 2014, plaintiffs agreed to voluntarily vacate the rental property by July 7, 2014, thereby mooting plaintiffs' request for injunctive relief. See id. 14–16. On July 23, 2014, Freddie Mac removed the action to this court pursuant to 28 U.S.C. §§ 1331 and 1442 and 12 U.S.C. § 1452(f). [D.E. 1].

On July 30, 2014, defendants moved to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). [D.E. 5]. On January 9, 2015, this court granted in part and denied in part defendants' motion. [D.E. 13]. Following this court's order of January 9, 2015, plaintiffs' claims for (1) breach of lease; (2) trespass; (3) trespass to chattels; and, (4) conversion remained. See id. On January 21, 2016, defendants moved for summary judgment [D.E. 26] and filed a memorandum in support [D.E. 27]. That same day, plaintiffs moved for partial summary judgment on the remaining

4

claims [D.E. 28] and filed a memorandum in support [D.E. 29].

II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of a genuine dispute of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248.

In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

Additionally, the parties' cross-motions require this court to apply North Carolina law. See [D.E. 13] 3–4 (identifying North Carolina law as the law applicable to this case). In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule on plaintiffs' claims. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d

5

365, 369 (4th Cir. 2005). If the state supreme court "has spoken neither directly nor indirectly on the particular issue before [the federal court, that court must] . . . predict how [the state supreme] court would rule if presented with the issue." Id. (quotations omitted). In making that prediction, the court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Id. (quotation omitted).[3] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Defendants seek summary judgment on plaintiffs' claims for breach of lease, trespass, trespass to chattels, and conversion, arguing that defendants' eviction of plaintiffs was legally proper. Specifically, defendants argue: (1) that the Protecting Tenants at Foreclosure Act ("PTFA"), Pub. L. No. 111-22, Div. A, Title VII (codified at 12 U.S.C. § 5220 note), does not preempt state law regarding the status of tenants of foreclosed landowners; (2) that the Chapter 45 writ of possession procedure that defendants used to evict plaintiffs was legally proper; (3) that "[e]ven if the PTFA pre-empted state law, the Plaintiffs do not qualify for PTFA protection because they did not pay the Mills rent for the entirety of their tenancy"; and, (4) that plaintiffs have not produced evidence of their damages. See [D.E. 27] 9–21. In their cross-motion, plaintiffs argue that: (1) the PTFA created a landlord-tenant relationship between plaintiffs and Freddie Mac; (2) that this court's earlier order specified that "the only proper method of eviction under North Carolina law was a summary ejectment proceeding under [N.C. Gen. Stat. §] 42-25.6"; and, (3) that defendants did not use N.C. Gen. Stat. § 42-25.6 to evict plaintiffs. [D.E. 29] 5. Accordingly, plaintiffs argue that, as a matter of law, defendants' June 16, 2014 eviction amounted to breach of lease, trespass, trespass to chattels, and conversion. See id. 5–18.

---

[3] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

6

A.

In 2009, Congress enacted the PTFA to protect "bona fide" tenants of rental properties subject to foreclosure. See 155 Cong. Rec. S5110-11 (daily ed. May 5, 2009). Section 702(a) of the PTFA, which confers certain rights upon bona-fide tenants, states:

> In general. – In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to–
>
> (1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
>
> (2) the rights of any bona fide tenant as of the date of such notice of foreclosure–
>
> (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or
>
> (B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),
>
> except that nothing under this section shall affect the requirements for termination of any Federal–or State–subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

Pub. L. No. 111–22, § 702(a), 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note). The PTFA creates a right for bona fide tenants in foreclosed-upon properties to remain in their rental residences until the end of the pre-foreclosure lease term or to receive a minimum of 90 days' notice to vacate, whichever is later. See, e.g., House v. Fed. Home Loan Mortg. Corp., No. 4:14-CV-129-D, 2015 WL 135979, at *6 (E.D.N.C. Jan. 9, 2015) (unpublished).

Although the PTFA requires pretermination notice, it does not itself create a private right of action. Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 158–60 (6th Cir. 2014); see Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1169–73 (9th Cir. 2013); Fulcrum Enters., LLC v. Bank of Am., N.A., Civil Action No. H-13-1930, 2014 WL 1669098, at *5 (S.D. Tex. Apr. 25, 2014) (unpublished). Rather, a bona fide tenant can use the PTFA "as a defense to an unlawful detainer

7

action" or, "[i]n cases where successors in interest do not initiate judicial proceedings, tenants . . . . must be permitted to use available state law causes of action, such as wrongful eviction, to enforce the PTFA's protections." Mik, 743 F.3d at 165, 167; see Fulcrum Enters., LLC, 2014 WL 1669098, at *5 n.46.

In enacting the PTFA, Congress sought to "ensure that tenants receive appropriate notice of foreclosure and are not abruptly displaced." Protecting Tenants at Foreclosure: Notice of Responsibilities Placed on Immediate Successors in Interest Pursuant to Foreclosure of Residential Property, 74 Fed. Reg. 30106 (June 24, 2009); Mik, 743 F.3d at 165 (quotation omitted); see Logan, 722 F.3d at 1172; Lopez v. DAPC LLC, No. C-12-01575 EDL, 2012 WL 2237227, at *3 (N.D. Cal. June 15, 2012) (unpublished); Nativi v. Deutsche Bank Nat'l Tr. Co., No. 09-06096 PVT, 2010 WL 2179885, at *3 (N.D. Cal. May 26, 2010) (unpublished). Therefore, the PTFA abrogates North Carolina law insofar as North Carolina law denies tenants living in foreclosed properties 90-days notice before any eviction and the ability to live on the property until the end of their pre-foreclosure lease term. House, 2015 WL 135979, at *6; see Mik, 743 F.3d at 163–64; Webb v. Green Tree Servicing, LLC., Civil Action No. ELH-11-2105, 2012 WL 2065539, at *7 (D. Md. June 7, 2012) (unpublished). This court's order of January 9, 2015, summarizes the interaction between the PTFA and North Carolina landlord-tenant law:

> [U]nder the PTFA, the tenancy of a bona fide tenant survives for at least 90 days following foreclosure and possibly until the end of the lease term. In much the same way that North Carolina law permits a property owner to sell his rental property and have his buyer assume the tenancy by operation of law, see, e.g., Perkins v. Langdon, 237 N.C. 159, 164, 74 S.E.2d 634, 639 (1953), the PTFA creates a landlord-tenant relationship between the successor in interest and the bona fide tenant for the PTFA's requisite time period and preempts conflicting state laws. See Erlach [v. Sierra Asset Servicing, LLC, 173 Cal. Rptr. 3d 159, 172–73 (Cal. Ct. App. 2014)]; Nativi [v. Deutsche Bank Nat'l Tr. Co.], 167 Cal. Rptr. 3d [173, 185–94 (Cal. Ct. App. 2014)]; Mason v. Wells Fargo Bank, N.A., [No. 05-12-01590, 2013 WL 5948077], at *5–6 [(Tex. Ct. App. Nov. 5, 2013) (unpublished)].

House, 2015 WL 135979, at *6.

8

The parties primarily dispute whether defendants were obligated to remove plaintiffs from the rental property under N.C. Gen. Stat. § 42-26 ("chapter 42") or whether defendants could proceed under N.C. Gen. Stat. § 45-21.29(k) ("chapter 45"). Compare [D.E. 27] 9, with [D.E. 28] ¶ 43 and [D.E. 29] 12. Chapter 42 applies in those cases where a landlord-tenant relationship exists between the parties. See Quinn v. Quinn, 777 S.E.2d 121, 125 n.4 (N.C. Ct. App. 2015); Adams v. Woods, 169 N.C. App. 242, 244, 609 S.E.2d 429, 431 (2005); Chandler v. Cleveland Sav. & Loan Ass'n, 24 N.C. App. 455, 459, 211 S.E.2d 484, 487 (1975). Chapter 42 provides certain statutory protections for individuals facing eviction, including a trial by magistrate and appeal to the district court. See N.C. Gen. Stat. §§ 42-31–42-32. Chapter 45, on the other hand, provides for different procedures following foreclosure on a property. By operation of North Carolina common law, "[o]rdinarily, all encumbrances and liens which the mortgagor or trustor imposed on the property subsequent to the execution and recording of the senior mortgage or deed of trust will be extinguished" after a foreclosure sale. Dixieland Realty Co v. Wysor, 272 N.C. 172, 178, 158 S.E.2d 7, 10 (1967); see Hobco Auto Sales, Inc. v. Dew, 773 S.E.2d 574, *3 (N.C. Ct. App. 2015) (unpublished table decision). Accordingly, under North Carolina law, a person could be removed from property without a trial to determine their status as a tenant. Specifically, the version of chapter 45 in effect at the time of plaintiffs' eviction required only that defendants give plaintiffs ten days' notice before obtaining an order for possession and did not require a full hearing before a magistrate. See N.C. Gen. Stat. § 45-21.29(k) (2014).[4] After the moving party obtains an order for possession, under either chapter 42 or chapter 45, a sheriff may "simply lock the premises" if the "landlord, or his authorized agent, signs a statement saying that the tenant's property can remain on the premises" if a party on the premises fails to vacate. N.C. Gen. Stat. § 42-36.2; see id. § 45-21.29(l) ("An order

---

[4] In 2015, the General Assembly clarified the chapter 45 order-for-possession procedure and adopted the PTFA's requirements as a matter of state law. See N.C. Gen. Stat. §§ 45-21.29(k)(5a), 45-21.33A. At the end of the lessee's pre-foreclosure lease term and 90-day notice period, chapter 45, not chapter 42, applies. See N.C. Gen. Stat. § 45-21.29(k)(5a).

9

for possession issued pursuant to G.S. 45-21.29(k) . . . shall be executed in accordance with the procedure for executing a writ or order for possession in a summary ejectment proceeding under G.S. 43-36.2.").

As part of their larger argument about damages, defendants contend that plaintiffs "have not produced in this case . . . any evidence or legal theories that would allow them to stay on the Property beyond the expiration of their alleged rights under the PTFA." [D.E. 27] 17. Although the court need not address the remainder of defendants' argument regarding damages, this point about how long plaintiffs could stay on the rental property merits further discussion.

On February 18, 2014, Freddie Mac obtained equitable title to the rental property. [D.E. 27-7] 2–3 (02/18/2014 Cumberland County deed conveying title to Freddie Mac); see Compl. ¶ 11; Ans. ¶ 11. Absent the PTFA, under North Carolina law, Freddie Mac would have become owner of the property free and clear of any leasehold held by plaintiffs. See Dixieland Realty Co., 272 N.C. at 175, 158 S.E.2d at 10; In re Foreclosure of Lien by Ridgeloch Homeowners Ass'n, Inc. Against McNeill, 182 N.C. App. 464, 469, 642 S.E.2d 532, 536 (2007). Due to the PTFA, however, the "successor in interest and the bona fide tenant"–or Freddie Mac and plaintiffs, respectively–assumed "a landlord-tenant" relationship "for the PTFA's requisite time period." House, 2015 WL 135979, at *6; see Erlach, 173 Cal. Rptr. 3d at 172 ("Bona fide tenancies for a term that continue by operation of the PTFA remain protected by California law." (quotation omitted)); Nativi, 167 Cal. Rptr. 3d at 173 (same); see also Mason, 2013 WL 5948077, at *5–6. Also due to the PTFA, plaintiffs obtained the right to remain tenants until the end of their pre-foreclosure lease term or 90 days after defendants provided them with "notice to vacate," whichever was later. See Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note); Mik, 743 F.3d at 164 (noting that the "PTFA provides that successors in interest must ordinarily allow bona fide tenants to occupy the foreclosed property until the end of their lease term" and "requires successors in interest to provide bona fide tenants with 90 days' notice to vacate"); House, 2015 WL 135979, at

10

\*3, \*5 ("[T]he PTFA allows a bona fide tenant to remain in the residence for at least 90 days and possibly until the end of his lease term.").

On February 28, 2014, defendants provided plaintiffs with notice to vacate in compliance with the PTFA. See [D.E. 27-11] 2. On March 31, 2014, plaintiffs' pre-foreclosure lease ended. See [D.E. 27-2] 3. On May 29, 2014, the 90-day PTFA notice period expired on plaintiffs' tenancy following defendants' February 28, 2014 notice. See [D.E. 27-11] 2. Accordingly, on May 29, 2014, plaintiffs had exhausted their additional PTFA safeguards. At that point, plaintiffs and defendants returned to their respective positions at the time of the foreclosure and before the PTFA intervened to give plaintiffs additional legal protection. As a result, on May 29, 2014, plaintiffs qualified as "parties in possession" of a foreclosed-upon mortgage as defined in N.C. Gen. Stat. § 45-21.29, and defendants properly proceeded under chapter 45.

In reaching this conclusion, the court applies the principles governing conflict preemption. A federal law preempts a state law when the state law prevents or inhibits a federal law from accomplishing its purpose, but it does so only to the extent that the state law prevents or inhibits the federal law from accomplishing its purpose. See, e.g., Arizona v. United States, 132 S. Ct. 2492, 2500–01 (2012). In determining how far preemption extends, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" Id. at 2501 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). As discussed, in enacting the PTFA, Congress sought to ensure that tenants receive appropriate notice of foreclosure and were not abruptly displaced after a foreclosure. The PTFA is silent, however, regarding the appropriate method by which a successor in interest may evict a tenant after providing the tenant with appropriate notice and allowing the tenant to serve out the remainder of the pre-foreclosure lease. See Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note).

11

Here, plaintiffs received both the benefit of 90 days' notice and the ability to serve out the remaining term on their pre-foreclosure lease. Returning the parties to the positions they occupied under North Carolina law before the PTFA's tolling of Freddie Mac's ability to evict promotes the purposes of the PTFA, limits federal intrusion into state law, and comports with North Carolina's common law and statutory scheme. See, e.g., N.C. Gen. Stat. §§ 45-21.29(k), 45-21.33A. Accordingly, the court holds that defendants complied with the PTFA's requirements, and that defendants permissibly used chapter 45 to remove plaintiffs. Cf. Roberts v. Bartels, Case No: C 12-06119 SBA, 2013 WL 6173360, at *4 (N.D. Cal. Nov. 25, 2013) (unpublished) (holding that plaintiffs' rights under the PTFA did not alter the conclusion that plaintiffs' "rights as a lessee were extinguished by the foreclosure sale").

In opposition, plaintiffs argue that their lease converted to "a month to month lease on April 1, 2014," [D.E. 34] 11, presumably relying on the lease's language that "[u]pon expiration, this Agreement shall become a month-to-month agreement automatically." See [D.E. 27-2] 3 (emphasis in original). Because defendants have "not produced any written termination of the lease," plaintiffs contend that the lease remained in effect as a month-to-month lease up to the date that defendants evicted plaintiffs. See [D.E. 34] 11. Thus, plaintiffs argue that they remained tenants, and defendants could use only chapter 42's procedures to remove them. See id.

Plaintiffs misapprehend the PTFA's interaction with operative state law. Although the PTFA abrogates otherwise conflicting state law so that tenants may remain in a foreclosed-upon property, it does not create a landlord-tenant relationship beyond the PTFA period. Moreover, assuming without deciding that plaintiffs' lease contract with Mills provided for an automatic renewal as a month-to-month lease, the PTFA only applies to "the remaining term of the lease" in effect "pre-foreclosure" and does not apply to renewals. See Pub. L. No. 111-22, § 702(a), 123 Stat. 1632, 1660–61 (2012) (codified at 12 U.S.C. § 5220 note); cf. N.C. Gen. Stat. § 45-21.33A(b) ("In no event shall the purchaser be required to renew the existing lease."); Dixieland Realty Co., 272 N.C.

12

at 175, 158 S.E.2d at 10. Furthermore, plaintiffs and Freddie Mac never agreed to a landlord-tenant relationship beyond the PTFA period. See House Dep. [D.E. 27-8] 161; see id. 184. Accordingly, plaintiffs' pre-foreclosure lease remained in effect only until March 31, 2014, and that was the only lease to which the PTFA applied

Additionally, plaintiffs argue that even if Chapter 45 applies, defendants "have not proven that they followed the statutory procedures to obtain the writ of possession." [D.E. 31] 4. In support, plaintiffs argue that N.C. Gen. Stat. § 45-21.29(k) requires that defendants give ten days' notice of sale to any party who rents a foreclosed-upon property, and not merely notice of eviction, cross-citing N.C. Gen. Stat.§ 45-21.17(4). See id. 4–5.

Plaintiffs' argument fails for at least two reasons. First, even if section 45-21.17(4) were relevant to this court's analysis, the record reflects that the foreclosing party fully complied with its strictures. See [D.E. 27-5] 2; N.C. Gen. Stat. § 45-21.17(4) (providing that notice may be addressed to the tenant using the term "occupant at the address of the property to be sold"). Moreover, the relevant version of section 45-21.29(k)(5) requires that the tenant of a foreclosed-upon property receive "ten days' notice" of an impending order for possession, not notice of the sale. See N.C. Gen. Stat. § 45-21.29(k)(5) (2014); Echols v. Branch Banking & Tr., No. 2:14-CV-40-FL, 2015 WL 5725521, at *4 (E.D.N.C. Sept. 30, 2015) (unpublished) (holding that providing "notice to plaintiff of the order for possession" sufficiently "complied with the provisions of N.C. Gen. Stat. § 45-21.29"), aff'd, 633 F. App'x 197 (4th Cir. 2016) (per curiam) (unpublished). Defendants provided plaintiffs with over 90 days' notice before applying for an order for possession under chapter 45. See [D.E. 27-11] 2; Compl. ¶ 14; Ans. ¶ 14. Accordingly, defendants complied with N.C. Gen. Stat. § 45-21.29(k). Cf. [D.E. 27-12] 4 (06/05/2014 Pitt County Superior Court order for possession) ("[A]ll of the requisites of the General Statutes of North Carolina have been complied with as well as all other legal requirements.").

13

Finally, plaintiffs argue in their motion for partial summary judgment that the court's previous order held that defendants could use only chapter 42 to evict plaintiffs. See [D.E. 29] 2; cf. House, 2015 WL 135979, at *7. The court disagrees. In resolving defendant's motion to dismiss, the court held only that plaintiffs plausibly alleged that defendants failed to comply with North Carolina law and the PTFA when they evicted plaintiffs. See id. Now, with the benefit of the factual record and the parties' briefing, the court holds that plaintiffs had exhausted their statutory protections under the PTFA, that defendants fully complied with the PTFA, and that defendants acted appropriately in proceeding under chapter 45 to evict plaintiffs. Accordingly, the court rejects plaintiffs' argument.

Plaintiffs received all protections due under the PTFA before their eviction took place. Moreover, defendants complied with chapter 45 when they evicted plaintiffs from the rental property. As a result, the court predicts that the Supreme Court of North Carolina would hold that defendants complied with all statutory prerequisites, appropriately obtained an order for possession under chapter 45, and complied with chapter 45 in evicting plaintiffs. Thus, the court grants summary judgment to defendants on plaintiffs' eviction.

B.

Plaintiffs claim that defendants breached the "implied warranty of quiet enjoyment" in plaintiffs' lease when defendants evicted plaintiffs from the rental property. See Compl. ¶¶ 33–36. Defendants move for summary judgment, arguing that if "Chapter 45 applies to this case," the court "must dismiss all of Plaintiffs' claims as a matter of law." [D.E. 27] 12. Additionally, defendants argue that plaintiffs have failed to cite any evidence suggesting the existence of a lease contract between Brock & Scott and plaintiffs. Id. 18.

North Carolina law treats a claim for breach of lease as a claim for breach of contract. See Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 871–72, 463 S.E.2d 571, 572–73 (1995).

14

A breach-of-contract claim involves two elements: (1) the existence of a valid contract; and, (2) breach of the terms of that contract. McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 29, 530 S.E.2d 838, 843 (2000). Plaintiffs have failed to cite any evidence supporting a contract between them and Brock & Scott. Accordingly, the court grants summary judgment to Brock & Scott as to this claim. As discussed, plaintiffs' pre-foreclosure lease expired on March 31, 2014, and plaintiffs' PTFA protections expired on May 29, 2014. Furthermore, on June 5, 2014, when Freddie Mac sought an order for possession under chapter 45 against plaintiffs, no lease contract existed between Freddie Mac and plaintiffs. As a result, plaintiffs' claim for breach of lease fails as a matter of law, and the court grants summary judgment to defendants on this claim.

C.

Plaintiffs claim that defendants or defendants' agents committed trespass, because defendants "did not have the consent of the plaintiffs" when they caused the sheriff to enter upon plaintiffs' property to eject them. See Compl. ¶¶ 44–47. Defendants seek summary judgment, arguing that their use of chapter 45 procedures was legal and that the sheriff properly entered the rental property. [D.E. 27] 12, 19.

Under North Carolina law, the elements of trespass to real property are: (1) possession of the property by the plaintiff at the time of the alleged trespass; (2) unauthorized entry by the defendant; and, (3) damage to the plaintiff as a result. Keyzer v. Amerlink, Ltd., 173 N.C. App. 284, 289, 618 S.E.2d 768, 772 (2005); see Matthews v. Forrest, 235 N.C. 281, 284–85, 69 S.E.2d 553, 555 (1952). Tenants holding a leasehold interest on real property may bring an action for trespass "irrespective of the landlord's consent." Maint. Equip. Co., Inc. v. Godley Builders, 107 N.C. App. 343, 354, 420 S.E.2d 199, 205 (1992); see Hendrix v. Guin, 42 N.C. App. 36, 36, 39, 255 S.E.2d 604, 606 (1979). However, a defendant "may assert that the entry was lawful or under legal right

15

as an affirmative defense." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 628, 588 S.E.2d 871, 874 (2003); Hildebrand v. S. Bell Tel. & Tel. Co., 216 N.C. 235, 235, 4 S.E.2d 439, 439 (1939); CDC Pineville, LLC v. UDRT of N.C., LLC., 174 N.C. App. 644, 652, 622 S.E.2d 512, 518 (2005).

Defendants used judicial process to have the sheriff enter upon the rental property after fully complying with chapter 45 and the PTFA. As a result, even if the sheriff qualified as defendants' agent, the court predicts that the Supreme Court of North Carolina would hold that the sheriff's entry was both lawful and under legal right. Accordingly, the court grants summary judgment to defendants on this claim.

### D.

Plaintiffs claim that defendants "or the agents of the Defendants" locked plaintiffs out of their residence and that "[m]ost, if not substantially all, of Plaintiffs' personal possessions were located inside of their Residence." Compl. ¶¶ 48–54. As a result, plaintiffs argue that defendants committed trespass to chattels. Defendants seek summary judgment, arguing that their use of chapter 45 procedures was legal and that the sheriff properly locked the rental property. [D.E. 27] 12, 19–20.

Under North Carolina law, the elements of trespass to chattels are: (1) that the plaintiff had "actual or constructive possession of the personalty or goods in question at the time of the trespass"; and, (2) that there was an "unauthorized, unlawful interference or dispossession of the property." Fordham v. Eason, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999); see Motley v. Thompson, 259 N.C. 612, 618, 131 S.E.2d 447, 452 (1963).

The sheriff had a locksmith change the locks to plaintiffs' residence after defendants fully complied with chapter 45. Moreover, North Carolina law allows a landlord or successor in interest to lock a residence after eviction takes place. N.C. Gen. Stat. § 42-36.2; see id. § 45-21.29(l). As a result, the court predicts that the Supreme Court of North Carolina would hold that defendants'

16

dispossession of plaintiffs' property was authorized and lawful. Accordingly, the court grants summary judgment to defendants on this claim.

E.

Finally, plaintiffs claim that "Defendants, or the agents of Defendants, locked the Plaintiffs out of their residence." Compl. ¶ 56. Plaintiffs claim that defendants' allegedly illegal eviction deprived plaintiffs of "the ability to use and enjoy their personal property" contained in the residence and "constituted conversion of said personal property." Id. ¶¶ 55–62. Defendants seek summary judgment, arguing that their use of chapter 45 was legal and that locking the rental property was proper. [D.E. 27] 12, 20–21.

Under North Carolina law, the tort of conversion "is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting Peed v. Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)). There are "two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc., 365 N.C. at 439, 723 S.E.2d at 747. Where a landowner takes possession of a putative tenant's "personal property in accord with the[ ] statutorily mandated procedures" following a foreclosure, he or she does "not convert [the] property." Smithers v. Tru-Pak Moving Sys., Inc., 121 N.C. App. 542, 551–52, 468 S.E.2d 410, 415 (1996); see Echols, 2015 WL 5725521, at *4.

Defendants fully complied with chapter 45 when they caused the sheriff to lock plaintiffs out of the rental property. As a result, the court predicts that the Supreme Court of North Carolina would hold that defendants permissibly locked plaintiffs' personal property and that this act did not constitute conversion. Accordingly, the court grants summary judgment to defendants on this claim.

17

F.

Defendants' eviction of plaintiffs complied with all relevant laws, and the court has granted summary judgment in favor of defendants as to plaintiffs' remaining claims. Accordingly, the court denies plaintiffs' motion for partial summary judgment.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 26] and DENIES plaintiffs' motion for partial summary judgment [D.E. 28]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 28 day of September 2016.

JAMES C. DEVER III
Chief United States District Judge